

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
11/25/2020

-------------------------------------------------------------- x
In re:                         :    Chapter 11
                              :
PACIFIC DRILLING S.A., *et al.*,[1]   :    Case No. 20-35212 (DRJ)
                              :
          Debtors.          :    (Jointly Administered)
                              :
-------------------------------------------------------------- x

**FINAL ORDER (I) AUTHORIZING THE DEBTORS**
**TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE**
**PROTECTION TO THE PREPETITION SECURED PARTIES, (III) MODIFYING**
**THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**
**[Relates to Motion at Docket No. 28]**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors, as debtors-in-possession

(collectively, the "**Debtors**"), pursuant to Sections 105, 361, 362, 363, 503, 506(c), and 507 of

Title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rule 4001-1(b) of the

Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**"), and the Procedures

for Complex Chapter 11 Bankruptcy Cases promulgated by the United States Bankruptcy Court

for the Southern District of Texas (the "**Complex Case Procedures**") seeking entry of an interim

order (the "**Interim Order**") and thereafter, following subsequent notice to parties in interest, a

final order (this "**Final Order**"), among other things:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are: Pacific Drilling S.A. (5724), Pacific Bora Ltd. (9815), Pacific Drilling Operations Limited (9103), Pacific Drilling Operations, Inc. (4446), Pacific Drilling, Inc. (1524), Pacific Drilling, LLC (7655), Pacific Scirocco Ltd. (0073), Pacific Sharav S.À R.L. (2431), Pacific Drilling Holding (Gibraltar) Limited (3754), Pacific Drilling Company Limited (4275), Pacific Sharav Korlátolt Felelősségű Társaság (4898), Pacific Drillship Nigeria Limited (0281), Pacific Drilling Finance S.À R.L., Pacific Drilling Limited, Pacific Drilling V Limited, Pacific Drilling VII Limited, Pacific Drillship S.À R.L., Pacific Mistral Ltd., and Pacific Santa Ana Limited.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(a)      authorizing the use of cash collateral, as such term is defined in Section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), on a final basis and subject to the terms and conditions set forth in this Final Order during the period beginning on the date of the entry of this Final Order and ending on the Termination Date (as defined below) of:

(i)      Wilmington Trust, National Association ("**Wilmington Trust**"), as indenture trustee and collateral agent (in such capacity, the "**Prepetition First Lien Notes Trustee**"), on behalf of and for the benefit of itself and the holders of the Prepetition First Lien Notes (as defined below) (the "**Prepetition First Lien Noteholders**," together with the Prepetition First Lien Notes Trustee and the other "Secured Parties" under the Prepetition First Lien Notes Indenture (as defined below), the "**Prepetition First Lien Notes Secured Parties**") issued under the Prepetition First Lien Notes Indenture (together with any related security agreements and other related documents, collectively, the "**Prepetition First Lien Notes Documents**"); and

(ii)     UMB Bank, N.A. as successor indenture trustee and junior lien collateral agent to Wilmington Trust (in such capacity, the "**Prepetition Second Lien PIK Notes Trustee**" and together with the Prepetition First Lien Notes Trustee, collectively, the "**Prepetition Trustees**") on behalf of and for the benefit of itself and the holders of the Prepetition Second Lien PIK Notes (as defined below) (the "**Prepetition Second Lien PIK Noteholders**," together with the Prepetition Second Lien PIK Notes Trustee and the other "Secured Parties" under the Prepetition Second Lien PIK Notes Indenture, the "**Prepetition Second Lien PIK Notes Secured Parties**" and the Prepetition Second Lien PIK Notes Secured Parties together with the Prepetition First Lien Notes Secured Parties, collectively, the "**Prepetition Secured Parties**") issued under the Prepetition Second Lien PIK Notes Indenture (as defined below) (together with any related security agreements and other related documents, collectively, the "**Prepetition Second Lien PIK Notes Documents**" and together with the Prepetition First Lien Notes Documents collectively, the "**Prepetition Secured Debt Documents**");

(b)      granting adequate protection to the Prepetition Secured Parties pursuant to Sections 361 and 363(c) and (e) of the Bankruptcy Code to the extent of the Adequate Protection Obligations (as defined below);

(c)      modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Final Order;

2

(d)      subject solely to the entry of this Final Order, waiving (i) except to the extent of the Carve Out (as defined below), the Debtors' ability to surcharge against the Prepetition Collateral or the Adequate Protection Collateral (as defined below) pursuant to Section 506(c) of the Bankruptcy Code, or any other applicable principle of equity or law, and (ii) the applicability of the "equities of the case" exception under Section 552(b) of the Bankruptcy Code with respect to the Prepetition Secured Parties;

(e)      subject solely to the entry of this Final Order, granting adequate protection liens on claims and causes of action arising under Section 549 of the Bankruptcy Code and all proceeds and property recovered in respect thereof, and subject to entry of the Final Order, all proceeds and property recovered in respect of claims and causes of action arising under Sections 502(d), 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code or any other state or federal law (such claims and causes of action, including claims and causes of action arising under Section 549 of the Bankruptcy Code, the "**_Avoidance Actions_**"); and

(f)      scheduling a final hearing (the "**_Final Hearing_**") by no later than 30 days after the Petition Date to consider entry of the Final Order authorizing on a final basis, _inter alia,_ the use of Cash Collateral and the provision of adequate protection of the Prepetition Secured Parties;

due and sufficient notice of the Motion under the circumstances having been given; the Court having conducted a hearing for interim relief on the Motion on November 2, 2020 (the "**_Interim Hearing_**"), at which time the Debtors presented and introduced into evidence, among other things, the (a) _Declaration of James Harris, Chief Financial Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings_ (the "**_First Day Declaration_**"); and (b) the declaration of Carrianne Basler in support of the Motion (the "**_Alix Declaration_**" and together with the First Day Declaration, the "**_Supporting Declarations_**"); and the Court having reviewed the Supporting Declarations, the pleadings, the evidence adduced by the parties, and the representations of counsel; and upon the entire record made at the Interim Hearing; and the Court having entered the Interim Order on November 3, 2020 [Docket No. 78]; and the Court having conducted the Final Hearing on November 25, 2020; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions contained herein is necessary and essential to enable the Debtors to preserve the value of their businesses and assets and to prevent immediate and irreparable harm to the Debtors' estates and to facilitate the reorganization of the

Debtors' businesses and that such relief is fair and reasonable and in the best interests of the Debtors' estates, their creditors, and all parties in interest; and the Court finding that good and sufficient cause appears therefor and that all objections to the entry of this Final Order have been withdrawn or are overruled;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 1334 and 157.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2). Venue for the Chapter 11 Cases (as defined below) and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      On October 30, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief with this Court under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Chapter 11 Cases are being jointly administered under Case No. 20-35212 (DRJ).

C.      Without prejudice to the rights of any other party-in-interest in the Chapter 11 Cases to object to the Plan (including the stipulated amounts and priorities of any liens and claims set forth therein) in accordance with the procedures approved by the Court for such objections, the Debtors (i) acknowledge, (ii) admit, (iii) agree, and (iv) stipulate to the validity and perfection of (a) the prepetition claims held by the Prepetition Secured Parties (the "**Prepetition Secured Indebtedness**") and (b) the prepetition liens on "Collateral" (as such term is defined in the Prepetition First Lien Notes Documents and the Prepetition Second Lien PIK Notes Documents, as applicable) (the "**Prepetition Collateral**") in favor of the Prepetition Secured Parties securing

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

the Prepetition Secured Indebtedness (the "**Prepetition Liens**"), in each case in the amounts and with the priorities set forth Article 3.2 of the Plan.

D.      Without prejudice to the rights of any other party, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries (other than, for the avoidance of doubt, non-Debtors Pacific Drilling Services, Inc., Pacific Drilling VII Limited, and their successors), and assigns (collectively, the "**Releasors**") shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the Prepetition Secured Parties, in all capacities under the Prepetition Secured Debt Documents and applicable law, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "**Releasees**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description based on or arising from any events, facts or circumstances that have occurred or exist as of the date hereof arising from or relating in any way to any of the Prepetition Secured Debt Documents or the obligations thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the

Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the Prepetition Liens or Prepetition Secured Indebtedness of the Prepetition Secured Parties.  The Debtors' acknowledgments, stipulations, waivers and releases set forth herein shall be binding on the Debtors, their estates, and their respective representatives, successors, and assigns, including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code. The admissions, stipulations, agreements, and releases set forth in this Final Order are based upon and consistent with the Debtors' investigation of the Prepetition Secured Parties' liens and claims and determination that the Debtors have no claims (as defined in Section 101(5) of the Bankruptcy Code), defenses, or counterclaims with respect to thereto.

E.     Good cause has been shown for the entry of this Final Order.  The preservation, maintenance and enhancement of the value of the Debtors' assets are of the utmost significance and importance. The Debtors lack sufficient available sources of working capital and financing, however, to carry on the operation of their businesses without the use of Cash Collateral. Moreover, the Debtors' need to use Cash Collateral is immediate; absent the ability to use Cash Collateral, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would be inevitable.

F.     Substantially all of the Debtors' cash constitutes Prepetition Collateral, and the Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitute Prepetition Collateral under the Prepetition Secured Debt

Documents and are, accordingly, subject to the valid and perfected security interests of the Prepetition Trustees and the other Prepetition Secured Parties.

G.      The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds and profits in their business operations which constitute Cash Collateral of the Prepetition Secured Parties under Section 363(a) of the Bankruptcy Code.  All or substantially all of the prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral of the Prepetition Secured Parties under Section 363(a) of the Bankruptcy Code.

H.      The Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral exclusively on and subject to the Budget and the terms and conditions set forth herein and for the limited duration of this Final Order.

I.      The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and the Complex Case Procedures.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors to:  (i) the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"); (ii) the parties included on the Debtors' consolidated list of the holders of the 30 largest unsecured claims against the Debtors; (iii) counsel to the Ad Hoc Crossover Group; (iv) the respective counsel to each of the Prepetition Trustees, (v) the United States Attorney's Office for the Southern District of Texas; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the state attorneys general for states in which the Debtors conduct business; and (ix) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. Sufficient and adequate notice of the Final Hearing and the entry of this Final Order have been given in accordance with Bankruptcy Rules 2002, 4001(b) and

(d), and 9006, as required by Sections 361 and 363 of the Bankruptcy Code.  No other or further notice need be given for entry of this Final Order.

J.      The adequate protection provided to the Prepetition Secured Parties in accordance with the terms of this Final Order for any diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral, including Cash Collateral, from and after the Petition Date for any reason whatsoever, including, without limitation, from the use, sale, lease or other diminution in value of the Prepetition Collateral (including any Cash Collateral) under Section 363 of the Bankruptcy Code or the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code is consistent with, and authorized by, the Bankruptcy Code and is necessary to protect such parties' interests in the Prepetition Collateral (including any Cash Collateral), in accordance with Sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties from any diminution of their respective interests in the value of the Prepetition Collateral (including any Cash Collateral) and (ii) obtain the foregoing consents and agreements.

K.      The Debtors stipulate, and the Court finds, that in permitting the Debtors to use the Cash Collateral or in taking any other actions permitted by this Final Order, none of the Prepetition Secured Parties shall (i) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, is used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal or

US-DOCS\118638187.5

state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

L.       Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to proceeds, product, offspring, or profits of any of the Prepetition Collateral or Adequate Protection Collateral.

M.      Based on the record before the Court, it appears (and the Debtors and the Prepetition Secured Parties have stipulated) that the terms of this Final Order, including, without limitation, as to the Debtors' use of Cash Collateral and the provision of adequate protection therefor, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of this Final Order were negotiated in good faith and at arm's length between the Debtors and the Prepetition Secured Parties.  The Prepetition Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under Section 363(m) of the Bankruptcy Code.

N.       The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2), Local Rule 4001-1, and the Complex Case Procedures. The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors. The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

US-DOCS\118638187.5

Based upon the foregoing findings, stipulations and conclusions, and upon the record made before the Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ON A FINAL BASIS:**

1. <u>Motion</u>.  The Motion is granted, subject to the terms and conditions set forth in this Final Order. The Debtors shall not use any Cash Collateral except as expressly authorized and permitted herein or by subsequent order of the Court. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.

2. <u>Use of Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, the Debtors are hereby authorized to use the Cash Collateral in accordance with the Budget during the period from the Petition Date and ending on the Termination Date for working capital, general corporate purposes, administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, and funding payments related to first-day relief granted by the Court, in each case subject to the terms hereof, as provided herein

3. <u>Budget; Use of Collateral Proceeds</u>.

(a)     The Debtors are authorized, on a final basis, to use Cash Collateral and pay expenses of the estate pursuant to the budget attached hereto as <u>Exhibit 1</u> (the "**Budget**"). For each four-week (or solely with respect to the initial Budget Period, five-week) Budget Period (as defined below), the aggregate actual (i) expenditures by the Debtors for total operating disbursements (as designated in the Budget, but excluding disbursements related to the Debtors' professional fees or the professional fees paid by the Debtors for any Committee or other party in interest in the Chapter 11 Cases) shall not in any event exceed the aggregate amount budgeted therefor in the Budget for such period by more than 20 percent of the budgeted amount and (ii) receipts (as designated in the Budget, but excluding the termination fee with respect to the *Pacific Khamsin*) shall not in any event be more than 20 percent less than the aggregate amount budgeted therefor in the Budget for such period;

(b)     The authorization granted herein is solely with respect to the use of Cash Collateral.  This Final Order shall not be deemed to authorize payment of non-ordinary

10

course expenses that otherwise require Court approval (*e.g.*, fees of professionals employed under Section 327 of the Bankruptcy Code).

(c)     Unless otherwise agreed to in writing by the Prepetition Secured Parties, the Debtors shall maintain no accounts except those identified in <u>Exhibits B and C</u> to the *Debtors' <u>Emergency</u> Motion for Entry of an Order (I) Authorizing Continuation of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms, (II) Authorizing Continuation of Existing Deposit and Investment Practices, (III) Authorizing the Continuation of Intercompany Transactions, and (IV) Granting Administrative Expense Status to Certain Postpetition Intercompany Claims* [Docket No. 15] (the "**Cash Management Motion**").  The Debtors will issue checks on their own accounts for the purpose of paying any Court-authorized prepetition obligations only if and when authorized by a further order of the Court, and only when due and otherwise properly payable and not otherwise addressed herein. Notwithstanding anything to the contrary in this Final Order, the Prepetition Secured Debt Documents, the Debtors, and the Prepetition Secured Parties, and each of the "Banks" (as defined in the Cash Management Motion) hereby agree that any agreements with any such Bank shall not be terminated.

(d)     Nothing herein shall be deemed or construed as an agreement by the Prepetition Secured Parties to be surcharged under Section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

4.     <u>Entitlement to Adequate Protection</u>.  The Prepetition Trustees and the other Prepetition Secured Parties are entitled, pursuant to Sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to any postpetition diminution in value of the Prepetition Trustees' or Prepetition Secured Party's interest in the Prepetition Collateral in any way, including without limitation, any diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code from and after the Petition Date (such diminution in value, the "**Adequate Protection Obligations**"). For the avoidance of doubt, the Motion, the Interim Order, and this Final Order shall each be deemed to be a request by the Prepetition Secured Parties pursuant to Section 363(e) of the Bankruptcy Code.

5.     [Reserved]

6.     <u>Adequate Protection in Favor of the Prepetition First Lien Notes Secured Parties</u>.

As adequate protection, the Prepetition First Lien Notes Trustee and the other Prepetition First Lien Notes Secured Parties are hereby granted the following claims, liens, rights, and benefits:

(a)     <u>Section 507(b) Claim</u>.  The Adequate Protection Obligations due to the Prepetition First Lien Notes Trustee and the other Prepetition First Lien Notes Secured Parties shall constitute allowed joint and several superpriority administrative claims against the Debtors as provided in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims, priority claims and administrative expense claims against the Debtors, now existing or hereafter arising in the Chapter 11 Cases (subject and subordinate only to the Carve Out), including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Sections 105, 326, 327, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "**Prepetition First Lien Notes 507(b) Claims**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, claims and causes of action arising under Section 549 of the Bankruptcy Code and all proceeds and property recovered in respect thereof, and all proceeds and property recovered in respect of any other Avoidance Actions.

(b)     <u>Adequate Protection Liens</u>.  Effective as of the Petition Date, solely to the extent of the Adequate Protection Obligations and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition First Lien Notes Trustee of any Adequate Protection Collateral, the following security interests and liens are hereby granted to the Prepetition First Lien Notes Trustee for the benefit of the Prepetition First Lien Notes Secured Parties, subject only to the Carve Out (all such liens and security interests, the "**Prepetition First Lien Notes Adequate Protection Liens**"):

(i)     <u>First Priority on Unencumbered Property</u>.  Pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority lien and/or replacement lien, on, and security interest in all of the Debtors' Unencumbered Property, including without limitation goods and other personal property, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, swap and hedge proceeds and termination payments, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, vessels, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those

arising under Section 549 Bankruptcy Code and all proceeds and property recovered in respect thereof, and all proceeds and property recovered in respect of the other Avoidance Actions), commercial tort claims, and the proceeds of all of the foregoing;

(ii)     Liens Junior to Certain Existing Perfected Liens.  Pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable junior priority replacement lien on, and security interest in, all of Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clauses (i) or (iii) of this paragraph 6(b) of this Final Order), to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the prepetition security interests and liens in favor of the Prepetition Secured Parties (the "**Other Senior Liens**");

(iii)    Liens Senior to Certain Existing Liens.  Pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Collateral and all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and all products, proceeds, rents and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise; *provided* that such liens and security interests shall not prime the Other Senior Liens;

(iv)     Status of the Adequate Protection Claims.  Subject to the Carve Out, the Adequate Protection Liens shall not be (i) subject or subordinate to, or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code or (ii) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 6(b) of this Final Order or agreed to in writing by the Prepetition First Lien Notes Trustee, subordinated to or made *pari passu* with any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

13

7.      <u>Adequate Protection in Favor of the Prepetition Second Lien PIK Notes Secured Parties</u>.  As adequate protection, the Prepetition Second Lien PIK Notes Trustee and the other Prepetition Second Lien PIK Notes Secured Parties are hereby granted the following claims, liens, rights, and benefits:

(a)      <u>Section 507(b) Claim</u>.  The Adequate Protection Obligations due to the Prepetition Second Lien PIK Notes Trustee and the other Prepetition Second Lien PIK Notes Secured Parties shall constitute allowed joint and several superpriority administrative claims against the Debtors as provided in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims, priority claims, and administrative expense claims against the Debtors, now existing or hereafter arising in the Chapter 11 Cases (subject and subordinate only to the Carve Out and the Prepetition First Lien Notes 507(b) Claims), including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Sections 105, 326, 327 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "**Prepetition Second Lien PIK Notes 507(b) Claims**" and together with the Prepetition First Lien Notes 507(b) Claims collectively, the "**Adequate Protection 507(b) Claims**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors, including, without limitation, claims and causes of action arising under Section 549 of the Bankruptcy Code and all proceeds and property recovered in respect thereof, and all proceeds and property recovered in respect of any other Avoidance Actions.

(b)      <u>Adequate Protection Liens</u>.  Effective as of the Petition Date, solely to the extent of the Adequate Protection Obligations and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Second Lien PIK Notes Trustee of any Adequate Protection Collateral, the following security interests and liens are hereby granted to the Prepetition Second Lien PIK Notes Trustee for the benefit of the Prepetition Second Lien PIK Notes Secured Parties, subject only to the Carve Out, and the Prepetition First Lien Notes Adequate Protection Liens (all such liens and security interests, the "**Prepetition Second Lien PIK Notes Adequate Protection Liens**" and together with the Prepetition First Lien Notes Adequate Protection Liens, the "**Adequate Protection Liens**"):

(i)      <u>Second Priority on Unencumbered Property</u>.  Pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable second priority lien and/or replacement lien, on, and security interest in (subordinate in all respects to the Prepetition First Lien Notes

14

Adequate Protection Liens), all of the Debtors' Unencumbered Property, including without limitation goods and other personal property, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, swap and hedge proceeds and termination payments, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, vessels, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under Section 549 Bankruptcy Code and all proceeds and property recovered in respect thereof, and all proceeds and property recovered in respect of the other Avoidance Actions), commercial tort claims, and the proceeds of all of the foregoing;

(ii)    <u>Liens Junior to Certain Existing Perfected Liens</u>.  Pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable junior priority replacement lien on, and security interest in, all of Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clauses (i) or (iii) of this paragraph 7(b) of this Final Order), that is subject to Other Senior Liens, Prepetition First Lien Notes Adequate Protection Liens, and the liens securing the Debtors' obligations under the Prepetition First Lien Notes Documents (the "**<u>Prepetition First Lien Notes Liens</u>**");

(iii)    <u>Liens Senior to Certain Existing Liens</u>.  Pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Collateral and all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and all products, proceeds, rents and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise; *provided* that such liens and security interests shall not prime the Other Senior Liens, Prepetition First Lien Notes Adequate Protection Liens, or Prepetition First Lien Notes Liens;

(iv)    <u>Status of the Adequate Protection Claims</u>.  Subject to the Carve Out, the Adequate Protection Liens shall not be (i) subject or subordinate

15

to, or *pari passu* with, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code or (ii) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 7(b) of this Final Order or agreed to in writing by the Prepetition First Lien Notes Trustee, subordinated to or made *pari passu* with any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

8.      <u>Additional Adequate Protection</u>.  As additional adequate protection:

(a)      <u>Fees and Expenses</u>:  The Debtors are authorized and directed to pay, in accordance with this paragraph 8(a) of this Final Order, all pre- and postpetition reasonable and documented fees and expenses, when due, of the Prepetition First Lien Notes Trustee and the Ad Hoc Crossover Group, and each of their respective advisors, including, without limitation, the fees and expenses of (i) Nixon Peabody LLP, as counsel to the Prepetition First Lien Notes Trustee, (ii) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Ad Hoc Crossover Group, (iii) Houlihan Lokey Captial, Inc., as financial advisor to the Ad Hoc Crossover Group, (iv) Walkers, as Cayman counsel to the Ad Hoc Crossover Group, (v) Loyens & Loeff Luxembourg S.À.R.L., as Luxembourg counsel to the Ad Hoc Crossover Group, and (vi) Seward & Kissel LLP, as maritime counsel to the Ad Hoc Crossover Group, incurred on or after the Petition Date. The payment of the fees, expenses and disbursements set forth in this paragraph 8(a) of this Final Order shall be made within ten (10) days after the receipt by the Debtors, counsel to the Ad Hoc Crossover Group, any statutory committee appointed in the Chapter 11 Cases, and the U.S. Trustee (the "**Review Period**") of invoices thereof (the "**Invoiced Fees**") (subject in all respects to applicable privilege or work product doctrines and the applicable fee letters) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided*, that if an objection is received by the applicable advisor prior to the expiration of the Review Period, the Debtors shall only be required to pay the undisputed portion of such invoice, and the Court shall have jurisdiction to resolve all objections with respect to the disputed portion of such invoice (it being understood that the Debtors are authorized and directed to pay any disputed portion of such invoice promptly upon the resolution of such objection).

(b)      <u>Other Covenants</u>:  The Debtors shall maintain their cash management arrangements in a manner consistent with the interim and final orders granting the Cash Management Motion.  The Debtors shall further abide by the covenants and reporting requirements set forth in the RSA.

(c)      <u>Reporting</u>:  The Debtors shall comply with the reporting requirements set forth in the Prepetition Secured Debt Documents.  In addition, the Debtors shall provide the following additional reporting to the Prepetition Trustees, with a copy to the Ad Hoc Crossover Group and the U.S. Trustee:

(i)      on or before 12:00 p.m. (prevailing Eastern time) on the first Thursday (or, if such Thursday is not a business day, the

immediately preceding business day) following each rolling four-week period (commencing with an initial five-week period ending December 5, 2020) (each such four-week period (or, solely in the case of the first such period, a five-week period), a "**Budget Period**"), an updated rolling 13-week cash flow forecast of the Debtors and their subsidiaries substantially in the form of the Budget (each such forecast, in the event it proposes to modify the Budget then in effect, a "**Proposed Budget**"), which proposed Budget upon written approval by the Ad Hoc Crossover Group shall become the Budget effective as of the first Monday following such written approval (the "**Budget Effective Date**"), and each such Budget shall run from its respective effective date through the Sunday prior to the Budget Effective Date of the next Budget; provided, however, that unless and until the Ad Hoc Crossover Group shall have approved in writing any Proposed Budget or any proposed modification to the Budget then in effect, the Debtors shall still be subject to and be governed by the terms of such Budget then in effect in accordance with the terms of this Final Order; and

(ii)    on or before 12:00 p.m. (prevailing Eastern time) on the first Thursday (or, if such Thursday is not a business day, the immediately preceding business day) following each rolling four-week Budget Period (commencing with the period ending December 5, 2020), a four-week report (or, solely in the case of the report for the initial testing period, a five-week report, which shall be delivered on or before the time and day specified in this paragraph 8(c)(ii) in the sixth week after the Petition Date) of receipts and disbursements and a reconciliation of actual receipts and disbursements with those set forth in the Budget for the prior four-week Budget Period, which report and reconciliation shall be presented in the same form as the Budget and otherwise in form and detail satisfactory to the Ad Hoc Crossover Group.

9.      <u>Carve Out</u>.

        (a)     *Priority of Carve Out*.   Each of the Prepetition Liens, Adequate Protection Liens, and Adequate Protection 507(b) Claims shall be subject and subordinate to payment of the Carve Out (as defined below).

        (b)     *Definition of Carve Out*.   As used in this Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under Section 1930(a) of Title 28 of the United States Code, plus interest at the statutory rate

(without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to Section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and any official committee appointed in the Chapter 11 Cases (each, a "**Committee**") pursuant to Section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and , together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by any of the Prepetition First Lien Notes Trustee or the Ad Hoc Crossover Group of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "**Pre-Carve Out Trigger Notice Cap**"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day following delivery by the First Lien Notes Trustee or the Ad Hoc Crossover Group of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"); *provided* that no fees or expenses of any Professional Persons may be included in the calculation of both the Post-Carve Trigger Notice Cap and the Pre-Carve Out Trigger Notice Cap.  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition First Lien Notes Trustee or the Ad Hoc Crossover Group to the Debtors, their lead restructuring counsel (Latham & Watkins LLP), the U.S. Trustee, counsel to the Ad Hoc Crossover Group, counsel to the Prepetition First Lien Notes Trustee, and counsel

to the Committee (if any) (the "**Carve Out Trigger Notice Parties**"), which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined below) stating that the Post-Carve Out Trigger Notice Cap has been invoked.

        *(c)*    *Carve Out Reserve*.  Notwithstanding the occurrence of a Termination Event, on the day on which a Carve Out Trigger Notice is given by the Prepetition First Lien Notes Trustee or the Ad Hoc Crossover Group to the Carve Out Trigger Notice Parties (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.  All funds held in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the fees and expenses included in the Pre-Carve Out Trigger Notice Cap (the "**Pre-Carve Out**

**Amounts**"), but not, for the avoidance of doubt, the fees and expenses included in the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date and as set forth in this Final Order.  All funds held in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the fees and expenses included in the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Amounts**"), until paid in full, and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be used first to pay any Pre-Carve Out Amounts until paid in full and then paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date and as set forth in this Final Order.  Notwithstanding anything to the contrary in the Prepetition Secured Debt Documents or this Final Order:  (i) if the Post-Carve Out Trigger Notice Reserve is not funded in full in the amount set forth in this paragraph 9, then, any excess funds in the Pre-Carve Out Trigger Notice Reserve following the payment of the Pre-Carve Out Amounts shall be used to fund the Post-Carve Out Trigger Notice Reserve, up to the applicable amounts set forth in paragraph 9(b)(iv), prior to making any payments to the Prepetition Secured Parties (ii) if, following delivery of a Carve Out Trigger Notice and any reallocation of amounts in the Carve Out Reserves pursuant to the immediately preceding clause (i), either of the Carve Out Reserves is funded in an amount that does not cover actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, then such Carve Out Reserves will be funded by the Debtors in an amount that will be equal to the value of actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, as soon as practicable, but no later than two (2) business days following discovery of such shortfall

by the Debtors; (iii) following delivery of a Carve Out Trigger Notice, the Prepetition Trustees shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Trustees for application in accordance with the Prepetition Secured Debt Documents ; (iv)(A) disbursements by the Debtors from the Carve Out Reserves shall not increase or reduce the Prepetition Secured Indebtedness, (B) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (C) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors; and (v) for the avoidance of doubt, the Carve Out shall be senior to all liens and claims securing the Prepetition Secured Indebtedness, the Adequate Protection Liens, the Adequate Protection 507(b) Claims, any other claims arising under Section 507(b) of the Bankruptcy Code, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Indebtedness.

(d)    *Payment of Allowed Professional Fees Prior to the Termination Declaration Date.*    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce or be deemed to reduce the Carve Out.

(e)    *No Direct Obligation To Pay Allowed Professional Fees*.  The Prepetition Trustees, the Ad Hoc Crossover Group and the other Prepetition Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget.  Except for funding the Carve Out Reserves as

21

provided herein, none of the Prepetition Secured Parties or the Ad Hoc Crossover Group shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties or the Ad Hoc Crossover Group, in any way, to pay compensation to, or reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

10. **Payment of Carve Out On or After the Termination Declaration Date.**  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the applicable Carve Out Reserve on a dollar-for-dollar basis. For the avoidance of doubt, the funding or payment of the Carve Out from cash on hand or other available cash shall not reduce Prepetition Secured Indebtedness.

11. Termination.  The Debtors' right to use the Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "**Termination Date**") without further notice or court proceeding upon the occurrence of a Termination Event (as defined below) without notice to the Debtors or any other parties in interest, *provided* that, other than with respect to the Termination Events identified in clauses (d), (e), (g), (o), (p), or (q) below, the Termination Date shall occur on the date that is the fifth (5th) business day following the delivery of a written notice (any such notice, a "**Default Notice**," and any such five-business-day period of time following delivery of a Default Notice, the "**Default Notice Period**") by the one of the Prepetition First Lien Notes Trustee or the Ad Hoc Crossover Group to the Debtors, Latham & Watkins LLP, Jones

Walker LLP, the U.S. Trustee, counsel to the Ad Hoc Crossover Group, counsel to the Prepetition First Lien Notes Trustee, the Prepetition Second Lien Notes Trustee or its counsel, and counsel to any Committee of the occurrence of any of the events set forth below (other than those events contemplated in clauses (d), (e), (g), (o), (p), or (q)) unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence is waived by the Prepetition First Lien Notes Trustee or the Ad Hoc Crossover Group, as applicable, in its sole discretion, *provided further* that, (X) during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of this Final Order and (Y) nothing contained herein shall prohibit or restrict the Debtors from seeking further relief from this Court regarding the use of Cash Collateral following the delivery of any Default Notice (the events set forth in clauses (a) through (v) below are collectively referred to herein as the "**Termination Events**"):

(a)     failure of the Debtors to make any payment under the Interim Order or this Final Order to the Prepetition First Lien Notes Trustee, the Ad Hoc Crossover Group, or any Prepetition Secured Party or their advisors after such payment becomes due;

(b)     failure of the Debtors to (i) comply with any material provision of this Final Order; or (ii) comply with any other covenant or agreement specified in this Final Order (other than those described in clause (i) above) in any material respect;

(c)     the Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than (i) those granted pursuant to the Interim Order or this Final Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations, surety bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business;

(d)     an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the written consent of the Prepetition Trustees and the Ad Hoc Crossover Group, as applicable;

(e)     the Debtors' commencing, or participating in furtherance of, any solicitation of any chapter 11 plan other than the Plan;

(f)     the Bankruptcy Court shall terminate or reduce the period pursuant to Section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(g)     the occurrence of the "Termination Date" under the RSA;

(h)     there shall be a breach by any Debtor of any material provisions of this Final Order, or this Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment;

(i)     (A) the entry of an order in the Chapter 11 Cases charging any of the Prepetition Collateral or Adequate Protection Collateral under Section 552(b) of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code against any of the Prepetition Secured Parties under which any person takes action against the Prepetition Collateral or Adequate Protection Collateral or that becomes a final non-appealable order, or (B) the commencement of other actions that are materially adverse to any of the Prepetition Secured Parties or their respective rights and remedies under the Prepetition Secured Debt Documents in the Chapter 11 Cases;

(j)     the entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $1 million;

(k)     the entry of any postpetition judgment against any Debtor in excess of $1 million;

(l)     the payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by the Prepetition Trustees on behalf of the Prepetition Secured Parties, unless authorized by Court Order or consented to in writing by the Prepetition Trustees and the Ad Hoc Crossover Group;

(m)     unless agreed to in writing by the Prepetition First Lien Notes Trustee and the Ad Hoc Crossover Group, the existence of any claims or charges, or the entry of any order of the Bankruptcy Court authorizing any claims or charges, other than as permitted under this Final Order, entitled to superpriority under Section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Prepetition Secured Indebtedness, or there shall arise or be granted by the Bankruptcy Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than the Carve Out), including the Adequate Protection 507(b) Claims, or (ii) subject to the Other Senior Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in

24

the Prepetition Secured Debt Documents or in the Interim Order or this Final Order, whichever Order is in effect;

(n)     the Court shall have entered an order dismissing any of the Chapter 11 Cases;

(o)     the Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(p)     the Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the Prepetition First Lien Notes Trustee and the Ad Hoc Crossover Group;

(q)     any Debtor shall support (by way of any motion or other pleading or paper filed with the Court or any other writing to another party in interest executed by or on behalf of any such Debtor) any other person's opposition to any motion made in the Court by the Prepetition Secured Parties seeking confirmation of the amount of the Prepetition Secured Parties' claims or the validity or enforceability of the liens in favor of the Prepetition Secured Parties;

(r)     any proceeding shall be commenced by any Debtor seeking, or otherwise consenting to, the invalidation, subordination, or other challenging of the Prepetition Liens, Adequate Protection 507(b) Claims or Adequate Protection Liens;

(s)     (i) any provision of this Final Order shall cease to be valid and binding for any reason or (ii) the Debtors shall seek any modification of this Final Order that is adverse to the Prepetition Secured Parties without the prior written consent of the Prepetition First Lien Notes Trustee and the Ad Hoc Crossover Group; and

(t)     The expiration of the Budget, unless a supplemental Budget has been agreed to in accordance with the terms of this Final Order, as applicable.

12.     <u>Remedies upon the Termination Date</u>.  Upon the occurrence of the Termination Date, the Adequate Protection Obligations shall become due and payable.  During the Default Notice Period (if applicable), except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (i) necessary to preserve the Debtors' going concern value or (ii) necessary to contest in good faith whether a Termination Event has occurred and/or is continuing.  If a Default Notice is delivered as provided in paragraph 11 above, the Debtors hereby consent to a hearing being held before this Court on an expedited basis and a motion shall be filed with the Court by the Prepetition First Lien Notes Trustee or Ad

US-DOCS\118638187.5

Hoc Crossover Group, as applicable on at least five (5) business days' notice (subject to the Court's availability) to cause the automatic stay to be lifted to enable the Prepetition First Lien Notes Trustee to exercise rights and remedies against the Prepetition Collateral and Adequate Protection Collateral in accordance with this Final Order, the Prepetition Secured Debt Documents, or applicable law and the Court may fashion an appropriate remedy upon a determination that a Termination Event has occurred.  The delay or failure of the Prepetition Trustees, the Ad Hoc Crossover Group, or the other Prepetition Secured Parties to exercise rights and remedies under the Prepetition Secured Debt Documents, the Interim Order, this Final Order, or applicable law shall not constitute a waiver of their respective rights thereunder or otherwise.  In no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Prepetition Collateral or the Adequate Protection Collateral.

13. <u>Application of Collateral Proceeds</u>.  Subject to entry of an order of the Court to the contrary, after the expiration of the Default Notice Period, if applicable, following the occurrence of a Termination Event, the Debtors shall be authorized and directed to remit all collections, remittances and proceeds that constitute or are proceeds of the Adequate Protection Collateral and the Prepetition Collateral, other than Prepetition Collateral that is the subject of a pending Challenge, to the applicable Prepetition Trustees, for the benefit of the applicable Prepetition Secured Parties.  Subject to entry of an order of the Court to the contrary, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be modified to permit the Prepetition Secured Parties to retain and apply all collections, remittances and proceeds of the Prepetition Collateral, and Adequate Protection Collateral, subject to and in accordance with this Final Order (including the Carve Out with respect to Adequate Protection Collateral), to the Prepetition

US-DOCS\118638187.5

Secured Indebtedness in accordance with the provisions of the Prepetition Secured Debt Documents.

14.  <u>Limitation on Charging Expenses Against Collateral</u>.  No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral, the Adequate Protection Collateral (except to the extent of the Carve Out), the Prepetition Trustees, or the other Prepetition Secured Parties pursuant to Sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of each affected Prepetition Secured Party, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Trustees, as applicable, or any of the other Prepetition Secured Parties; *provided*, *however* that nothing in the Interim Order or this Final Order shall prohibit or restrict the Debtors from seeking further relief from this Court regarding the use of Cash Collateral following the delivery of any Default Notice, <u>provided</u> no such relief shall include charging collateral pursuant to Sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity.  Neither the Prepetition Secured Parties consent to the Budget nor anything else contained herein shall be deemed or construed as agreement by the Prepetition Secured Parties to be surcharged under Section 506(c) or any other provision of the Bankruptcy Code or any other legal or equitable doctrine.

15.  <u>Payments Free and Clear</u>   Except to the extent of the Carve Out, any and all payments or proceeds remitted to the applicable Prepetition Trustees, on behalf of the applicable Prepetition Secured Parties pursuant to the provisions of this Final Order or any subsequent order of the Court shall be irrevocable (subject to paragraph 19 of this Final Order (*Preservation of*

*Rights Granted Under This Final Order*)), received free and clear of any claim, charge, assessment, or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Sections 506(c) (whether asserted by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

16.     <u>Reservation of Rights of the Prepetition Secured Parties</u>.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Trustees, and the other Prepetition Secured Parties hereto is without prejudice to the right of the Prepetition Trustees and the other Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, *provided* that any such request for different or additional adequate protection shall be without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the rights of the Prepetition Trustees or the other Prepetition Secured Parties under the Prepetition Secured Debt Documents or under equity or law, and the Prepetition Trustees, and the other Prepetition Secured Parties expressly reserve all of their rights and remedies whether now existing or hereafter arising under the Prepetition Secured Debt Documents and/or equity or law in connection with all Termination Events and Defaults and Events of Default (as defined in the Prepetition Secured Debt Documents and whether arising prior to or after the Petition Date).

17.     <u>Modification of Automatic Stay</u>.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby.  The stay of Section 362 of the Bankruptcy Code is hereby modified to

US-DOCS\118638187.5

permit the Debtors and the Prepetition Trustees, the Ad Hoc Crossover Group, and each of the other Prepetition Secured Parties to accomplish the transactions contemplated by this Final Order.

18.   <u>Perfection of Adequate Protection Liens</u>.

(a)   The Prepetition Trustees are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to each hereunder, respectively. Whether or not the Prepetition Trustees shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of the Interim Order. If the Prepetition Trustees determine to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the Prepetition Trustees, and the automatic stay shall be modified to allow such filings.

(b)   A certified copy of this Final Order may, in the discretion of the Prepetition Trustees, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; *provided* that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of the Interim Order.

(c)   Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the Prepetition Secured Debt Documents or this Final Order.

19.   <u>Preservation of Rights Granted Under This Final Order</u>.

(a)   Except as expressly provided in this Final Order or as otherwise agreed to in writing by the Prepetition Trustees, no claim or lien having a priority senior to or *pari passu* with those granted by this Final Order to the Prepetition Secured Parties shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to, or *pari passu* with, any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under Section 364(d) of the Bankruptcy Code or otherwise.

US-DOCS\118638187.5

(b)     Notwithstanding any order dismissing any of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the Adequate Protection 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall continue in full force and effect and, except as agreed to in writing by the Prepetition Trustees, shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such Adequate Protection 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Trustees of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral (including Cash Collateral) or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Prepetition Trustees of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Trustees and the other Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted herein and to the protections afforded in Section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations.

(d)     The adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Chapter 11 Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)     Except as expressly provided in this Final Order, the Adequate Protection Obligations, the Adequate Protection 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Trustees and the other Prepetition Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection 507(b) Claims, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies

of the Prepetition Trustees and the other Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

20.    <u>Limitation on Use of Collateral</u>.    The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in this Final Order.  Notwithstanding anything herein or in any other order of the Court to the contrary, no Prepetition Collateral or Adequate Protection Collateral, including Cash Collateral, may be used to:  (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the Prepetition Secured Indebtedness, or the liens or claims granted under this Final Order or the Prepetition Secured Debt Documents; (ii) investigate or assert any challenge against the Prepetition Trustees or any of the other Prepetition Secured Parties or any of their respective agents, affiliates, representatives, attorneys or advisors; (iii) seek to modify any of the rights granted to the Prepetition Trustees or the other Prepetition Secured Parties hereunder, or (iv) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court, *provided* that, notwithstanding anything to the contrary herein, no more than $25,000 of the Carve Out in the aggregate may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Secured Indebtedness or the liens on the Prepetition Collateral or investigate any causes of action against the Prepetition Trustees or any other Prepetition Secured Parties..

21.    <u>Bankruptcy Code Section 552(b)</u>.  The Prepetition Trustees and each of the other Prepetition Secured Parties shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Trustees or the other Prepetition Secured Parties with respect to (i) proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Adequate Protection Collateral.

US-DOCS\118638187.5

22.    <u>Preservation of Rights Under the RSA</u>.  Nothing contained in this Final Order shall in any way preclude or impair the rights of the Debtors or the Consenting Creditors under the RSA, including, for the avoidance of doubt, any claims or causes of action held by the Debtors or the Consenting Creditors, as applicable, resulting from any breach of the RSA by the other parties thereto.  The automatic stay is waived to the extent necessary to allow parties to provide all notices contemplated in the RSA.

23.    <u>Binding Effect; Successors and Assigns</u>.  The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including without limitation, the Prepetition Trustees, the other Prepetition Secured Parties, any Committee and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of any Debtor, any examiner appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Trustees, the other Prepetition Secured Parties, and the Debtors and their respective successors and assigns, *provided* that, except to the extent expressly set forth in this Final Order, the Prepetition Trustees and the other Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or Adequate Protection Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor.  For the avoidance of doubt, the terms of this Final Order shall not confer standing in these Chapter 11 Cases on any party.  For all adequate protection and stay relief purposes throughout the Debtors' Chapter 11 Cases, the Prepetition Trustees and the other Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate

32

protection as of the Petition Date.  For the avoidance of doubt, such request will survive termination of this Final Order.

24.    <u>Limitation of Liability</u>.   In permitting the use of the Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order, the Prepetition Secured Debt Documents or any applicable law, the Prepetition Secured Parties shall not (i) have liability to any third party or be deemed to be in control of the operations of any of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors. Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims (as defined in Section 101(2) of the Bankruptcy Code) arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates.

25.    <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there

US-DOCS\118638187.5

shall be no stay of execution or effectiveness of this Final Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

26. <u>Proofs of Claim</u>.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or successor cases, and the Debtors' stipulations in paragraph C herein shall be deemed to constitute a timely filed proof of claim against each of the Debtors.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or successor cases shall not apply to the Prepetition Trustees or the other Prepetition Secured Parties with respect to the Prepetition Secured Indebtedness.  Notwithstanding the foregoing, the Prepetition Trustees (on behalf of themselves and the applicable Prepetition Secured Parties) are each hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a master proof of claim for any claims of the respective Prepetition Secured Parties arising from the applicable Prepetition Secured Debt Documents; *provided*, that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

27. <u>Credit Bidding</u>.  The Prepetition Trustees shall each have the unqualified right to credit bid (subject to the requirements of the applicable Prepetition Secured Debt Documents), up to the full amount of the Prepetition Secured Parties' secured claims as applicable, in any sale of the Prepetition Collateral or Adequate Protection Collateral as provided for in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through Section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise.

US-DOCS\118638187.5

28.    <u>Asset Sales</u>.  All sales and other dispositions (including casualty and condemnation events) of Collateral other than dispositions in the ordinary course of business and dispositions outside the ordinary course of business that have a value of less than $500,000 on a net basis (collectively, "**<u>Collateral Sales</u>**"), unless otherwise agreed to in writing by the Prepetition Trustees, shall be in exchange for 100% cash consideration.  All net cash proceeds of any Collateral Sales shall be paid to the applicable Prepetition Trustees and applied in accordance with the Prepetition Secured Debt Documents.  Any proposed property exchange with respect to Collateral that is not in exchange for 100% cash consideration (other than as set forth above) shall be subject to the consent of the Prepetition Trustees.  The Debtors shall not use, sell or lease any assets outside the ordinary course of business that have a value in excess of $500,000 on a net basis, or seek authority of the court to do any of the foregoing, without the prior consent of the Prepetition Trustees at least five (5) business days prior to the date on which the Debtors seek the authority of the court for such use, sale or lease.

29.    <u>Citibank Letter of Credit</u>.  Debtor Pacific Drilling Company Limited ("**<u>CayCo</u>**") shall and shall be authorized to pledge $5,575,788.35 of cash as collateral (the "**<u>CayCo Pledge</u>**") to be held in an account maintained by Citibank, N.A. ("**<u>Citi</u>**") for a certain letter of guarantee (the "**<u>Citibank LC</u>**") provided by Citi for which CayCo is currently a guarantor.  Upon provision of the CayCo Pledge, Citi shall be deemed to have a perfected, first-priority security interest in the CayCo Pledge (the "**<u>Citi Liens</u>**") and the Prepetition Secured Parties shall be deemed to have perfected security interests junior to the Citi Liens in the same priority as the Prepetition Secured Parties' security interests in other Collateral.  Notwithstanding anything to the contrary in this Final Order, the CayCo Pledge shall remain segregated from the remainder of the Debtors' Cash Collateral and the Debtors shall not be authorized to utilize the CayCo Pledge for any of the uses

35

authorized by paragraphs 2 and 3 of this Final Order.  Upon provision of the CayCo Pledge, Citibank's security interest in the $5,575,788.35 prepetition pledge of cash by Debtor Pacific Drilling S.A. (the "**PDSA Pledge**") pursuant to that certain Pledge, Assignment, Control and Cash Collateral Agreement dated as of September 25, 2019, shall be released to the Debtors, and the Debtors shall be authorized to utilize the funds as Cash Collateral pursuant to the terms and conditions of this Final Order.  The Debtors shall and are hereby authorized to enter into any agreements reasonably required by Citi and the Prepetition Secured Parties to effectuate the CayCo Pledge and the release of the PDSA Pledge, including but not limited to any pledge agreements, assignment agreement, cash collateral agreements, control agreements, release agreements, and any similar agreements.

30.    _Headings_.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

31.    _Jurisdiction_.  The Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

32.    _Controlling Effect of Final Order_.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Final Order shall control to the extent of such conflict.

**Signed:  November 25, 2020.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

36

## Exhibit 1

**Budget**

# Pacific Drilling
## Consolidated Cash Forecast
*($000's)*

| Forecast Week --> | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Beg (Sun)** | **11/1/20** | **11/8/20** | **11/15/20** | **11/22/20** | **11/29/20** | **12/6/20** | **12/13/20** | **12/20/20** | **12/27/20** | | |
| **Week End (Sat)** | **11/7/20** | **11/14/20** | **11/21/20** | **11/28/20** | **12/5/20** | **12/12/20** | **12/19/20** | **12/26/20** | **1/2/21** | **Emergence** | **Total** |
| Receipts | | | | | | | | | | | |
| Vessel Receipts | - | 8,545 | 6,327 | 3,235 | - | - | 5,273 | 3,131 | - | - | 26,510 |
| Reimbursements | - | - | 224 | - | - | - | 224 | - | - | - | 447 |
| | | | | | | | | | | | |
| Operating Disbursements | | | | | | | | | | | |
| Operating | (67) | (66) | (66) | (416) | (417) | (692) | (1,601) | (526) | (526) | - | (4,377) |
| G&A | (76) | (17) | (117) | (50) | (885) | (101) | (208) | (68) | (568) | - | (2,089) |
| Insurance | - | - | - | - | - | - | (1,813) | - | - | - | (1,813) |
| Payroll | - | (1,674) | - | (4,435) | - | (1,701) | - | - | (5,852) | - | (13,662) |
| Total Operating Disbursements | (143) | (1,758) | (183) | (4,901) | (1,302) | (2,494) | (3,621) | (593) | (6,945) | - | (21,942) |
| | | | | | | | | | | | |
| *Net Cash Activity before Non Operating Disbursements* | *(143)* | *6,788* | *6,367* | *(1,666)* | *(1,302)* | *(2,494)* | *1,875* | *2,537* | *(6,945)* | *-* | *5,016* |
| | | | | | | | | | | | |
| Advisory Fees | - | - | - | - | - | - | - | - | - | (13,436) | (13,436) |
| Tax | - | - | - | (676) | - | - | - | - | 629 | - | (46) |
| Financing Fees | - | - | - | - | - | - | - | - | - | (2,000) | (2,000) |
| Exit Facility Draw Down (1) | - | - | - | - | - | - | - | - | - | 25,000 | 25,000 |
| Total Non Operating Disbursements | - | - | - | (676) | - | - | - | - | 629 | 9,564 | 9,517 |
| | | | | | | | | | | | |
| *Net Cash Activity after Non Operating Disbursements* | *(143)* | *6,788* | *6,367* | *(2,342)* | *(1,302)* | *(2,494)* | *1,875* | *2,537* | *(6,316)* | *9,564* | *14,533* |
| *Cumulative Cash Balance* | *117,360* | *124,148* | *130,515* | *128,173* | *126,870* | *124,376* | *126,251* | *128,788* | *122,472* | *132,036* | *132,036* |

(1) Initial draw will only be executed upon consent of lenders.